LOUISA A. PORTER, APPELLEE, v. PACKERS NATIONAL BANK, APPELLANT.*

FILED MARCH 1, 1918.   No. 19592.

Fraud: EVIDENCE: SUFFICIENCY. Under the evidence in this case, the only damage, if any, to the plaintiff was in inducing her to sell the lot for less than she would have done if she had known the facts. If she was wrongfully induced to do this, the evidence does not show that this defendant had anything to do with that wrong.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE. *Reversed.*

*Murphy & Winters,* for appellant.

*Edgar M. Morsman, Jr., contra.*

SEDGWICK, J.

The plaintiff, a nonresident of the state, sold real estate in Douglas county through a real estate agent of South Omaha. She executed a warranty deed to the purchaser, and sent it to the defendant bank to be delivered upon the consummation of the deal. The bank rendered her a statement remitting the proceeds of the sale after deducting, among other things, $121.32 taxes alleged to have been due upon the land sold and to have been deducted from the purchase price. The plaintiff brought this action to recover from the bank the said $121.32, alleging that the bank was not authorized to make such deduction. The case was first tried upon a demurrer to the petition, and upon appeal to this court a judgment for the defendant was reversed.

*Rehearing allowed.  See opinion, p. 258, *post.**

95 Neb. 223. Upon the second trial in the district court, a jury was waived, and the court found in favor of the plaintiff, and the defendant has appealed.

It is conceded that these taxes were a valid lien upon the land, and that the plaintiff covenanted in her deed that the title conveyed should be free and clear of such incumbrances. The transaction on this plaintiff's part was conducted wholly by correspondence, and it would seem that the agent, Murphy, was acting principally for the purchaser, but made strong representations to the plaintiff inducing her to make the sale at the price finally agreed upon, and it appears to be contended that these taxes were for special improvements so recently made that this plaintiff was not aware of such improvements, which should have been considered as adding value to the land, and that the plaintiff would not have sold the land at the price named if aware that she would be required to pay for these improvements; and that the transaction amounts to a perpetration of a fraud upon the plaintiff, and resulted in obtaining the plaintiff's property for a less price than she would have been willing to have taken for it. The question is not whether the agent has wronged the plaintiff and caused her to sell the property for less than its value and less than she would have taken for it if the truth had been explained to her. The question is whether the bank has wronged the plaintiff, and, if such fraud existed on the part of others, whether the bank participated in or knew of any such wrongdoing. When the plaintiff sent the deed to the bank, she sent specific instructions that it was to be delivered to the agent Murphy "upon payment of $1,650, less $25 commission and a reasonable charge for bringing the abstract covering this property down to date." The specified commission and the cost of the abstract were deducted by the bank, and no complaint is made of this, and the plaintiff insists that under these instructions the bank had no authority to allow for liens upon the land.

In Mr. Murphy's first letter to the plaintiff, he asked for her lowest price upon the property, "you to furnish an abstract showing the property free from all liens, and abstract up to date showing title clear, also furnish good and sufficient warranty deed." In reply to this letter in fixing her price, the plaintiff made no objection to the proposition that the property must be free from all liens, and, in a subsequent letter to the plaintiff, Murphy wrote making the final offer which was accepted, in which he said: "If this is satisfactory, you will send deed to the Packers National Bank of South Omaha, with instructions to the bank to turn the papers over to me or Mrs. Dolezal, upon receipt of $1,650, less $25 commission, the expense of extending abstract up to date and taxes, if any, against the property." When the deal was closed by Murphy and the money paid over to the bank, the bank wrote the plaintiff a statement of the transaction, in which the expenses in connection with the matter were stated to include the taxes, $121.32. There is evidence that the bank did not deliver the deed at the time of sending this letter, but retained it until the plaintiff should approve or disapprove of the transaction. It is insisted in the brief that this evidence is not reliable, but no contradictory evidence is referred to, and we have not seen any. We must consider then that the bank did not deliver the deed until the plaintiff might approve or disapprove of the transaction. In answer to the bank's statement, the plaintiff wrote: "I was not aware that there was any taxes against this lot, and wish to advise you that I am accepting this draft only in part payment of the purchase price of the lot in question, pending an investigation on my part as to the justice of the taxes for which you sent me receipt." It seems that the bank sent the receipt for the taxes in its first letter, and also sent a draft for the amount due the plaintiff. The plaintiff, not being aware that there were any such assessments

against the land, appears to have readily consented to Mr. Murphy's proposition that she must pay all taxes, and ignored that matter entirely in her letter sending the deed to the bank. As the deed was a warranty deed with covenants against such liens, and as the letters of Murphy asking the plaintiff to fix a price upon the land plainly specified that taxes, if any, should be deducted from the price so fixed, it would appear that the bank did all that it could be required to do in holding the deed until the plaintiff had an opportunity to approve or disapprove of the transaction, and the plaintiff's letter above quoted must be construed as approving of the transaction if her investigation showed that the taxes paid were just. No issue was made as to the justice of the taxes, and, if any fraud or wrong was perpetrated upon the plaintiff, there is no evidence that the bank participated therein or was aware thereof. The only damage, if any, to the plaintiff is not in paying the taxes on her land, but in selling the land for a less price than she otherwise would have done, and, if she was wrongly induced to do this, it was wholly the act of the agent Murphy, and not of the bank.

It follows that the bank is not liable in this case, and the judgment of the district court is

REVERSED.

The following opinion on motion for rehearing was filed July 8, 1918. *Former judgment of reversal set aside, and judgment of district court affirmed.*

SEDGWICK, J.,

This case upon this appeal was first argued before the court commission, and an opinion written by the court upon the facts reported by the commission, *ante*, p. 255. The plaintiff upon motion for rehearing com-

plained that there had been no opportunity to present the case to the court on argument, and the court ordered oral argument on the motion for rehearing, and the case was argued and submitted to the court.

It is contended in the brief that some of the statements of facts in the opinion are not supported by the evidence in the record. It is conceded that, at the close of the negotiations, the agent Murphy stated the understanding of the parties in his letter quoted in the former opinion, in which he said that the plaintiff should send the deed to the bank, with instructions to turn over the papers, ''upon receipt of $1,650, less $25 commission, the expense of extending abstract up to date and taxes, if any, against the property.'' Pursuant to this statement of the matter the plaintiff sent a warranty deed to the bank to be delivered under their agreement, in which she guaranteed against all taxes. When the agent called upon the bank, proposed to make the payment, and demanded the deed, the bank found that there were discrepancies in the correspondence and misunderstandings between the parties. It is conceded by all parties that the taxes were just and were a valid lien upon the land. The natural thing for the bank to do, if disinterested, would be to receive the tenders made by the purchaser of the land upon condition that the deed should not be delivered until the plaintiff, after being informed of the amount deducted for the taxes, should consent to such a consummation of the transaction. The bank thereupon held the deed, but did not inform the plaintiff fully of the situation. The bank held the deed for at least ten days, but failed to inform the plaintiff of that fact, and, on the other hand, by sending the tax receipt to plaintiff and stating that it was hoped that the plaintiff would be satisfied, and in other ways, the bank led the plaintiff to understand that the transaction was closed. The taxes in question were mostly for improvements that are presumed to enhance the value of the property

more than the amount of the taxes. The plaintiff did not know that these improvements had been made, and stated her price upon the supposition that she was selling the property as she understood it to be, and was not aware that out of this purchase money she would be compelled to add largely to the value of the land without an equivalent return to herself. These taxes, although payable at once, were not collectable against the property then, but were payable in instalments running through a period of years. It is quite usual in such cases to sell subject to the lien, and, as these taxes represent the increased value of the property, it would not ordinarily be expected that the owner would pay them and still sell for the same price offered before the improvement was made. The majority of the judges conclude that the evidence shows that the bank knew of these circumstances, and caused the plaintiff to understand that the transaction was closed, and that she could not include the value of the improvements in the price to the purchaser, and that, in this view of the evidence, this defendant participated in this wrong to the plaintiff, and the judgment of the district court is sustained. The syllabus of our former opinion in that respect is incorrect.

Our former judgment is set aside, and the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.